UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES RELEASING CORPORATION, SONY PICTURES HOME ENTERTAINMENT INC., and MARVEL CHARACTERS, INC.,  :  :  :  :  : | Case No.: 07 CIV 3597 (LTS) |

                                       Plaintiff,     :

                         :

        -against-                   :

                         :

JOHN and JANE DOE Nos. 1 through 100, and XYZ  :
Company Nos. 1 through 100,

                         :

                      Defendants.   :

**DECLARATION IN
SUPPORT OF MOTION
TO DISMISS COMPLAINT**

--------------------------------------------------------------------x

       DAVID COHEN, declares under the penalties of perjury that the following

statements are true:

       1.     I am one of the Defendants in within action and the President of the

Defendants Amsterdam Boutique, Inc. and Canal Street Designs, Inc.  This Affidavit is

submitted in support of the Defendants David Cohen, Yaacov Cohen, Michael Marvisi, 365

Canal Corp, Amsterdam Boutique, Inc. and Canal Street Designs, Inc. (hereinafter, "the

moving Defendants") motion for an order dismissing the complaint against them.  Unless

otherwise indicated, this Declaration is based upon my personal knowledge and the books

and records of the corporate Defendants which are in my possession.

       2.     This action, arises out of the alleged "unauthorized importation,

manufacture, distribution, sale and commercial exploitation of Plaintiffs' copyrighted and

trademark-protected motion pictures including but not limited to, "Spider-Man 3", as set

forth in Paragraph 1 of the Amended Complaint ( hereinafter "AC").  A copy of the

Amended Complaint is annexed hereto as *Exhibit A*. The Defendants have not interposed an Answer to the Complaint.

<u>BACKGROUND</u>

3.    This action was instituted by the Plaintiffs to enforce the Plaintiffs' rights to copyrighted and trademarked motion pictures, the names of which are annexed to the Amended Complaint as *Exhibit 5*. The only copyrighted material which is the subject matter of the Amended Complaint involving the moving Defendants is "Perfect Stranger". The Plaintiffs are allegedly the copyright and trademark owner of this work.

4.    The Defendant David Cohen is the President of Amsterdam Boutique, Inc. and Canal Street Designs, Inc.

5.    The Defendant Yaacov Cohen is the Secretary of Amsterdam Boutique, Inc. and Canal Street Designs, Inc.

6.    The Defendant Michael Marvisi is the President of 365 Canal Corp.

7.    The Defendant 365 Canal Corp. is the owner of the real property located at 365 Canal Street New York, NY, hereinafter sometimes referred to as the premises.

8.    The Defendant 365 Canal Corp. as "landlord" and the Defendant Canal Street Designs, Inc. as "tenant" entered into a written lease agreement which provided, among other things, for a term of twelve (12) years commencing on July 15, 2006 and expiring on July 14, 2018. The relevant portions of the lease are annexed hereto as *Exhibit B*. Neither David Cohen, nor Yaacov Cohen have any right to occupy these premises as tenants and Michael Marvisi has no right to any of the rights of landlord. In other words, the aforesaid individuals, are only officers of their respective corporations but are not

parties to any agreements between the parties.

UNDISPUTED FACTS

9.      As stated above, Canal Street Designs, Inc. leased the demised premises from 365 Canal Corp. to carry on the business of a women's retail clothing store. It is the sole business of this corporation to sell women's clothing and accessories. We have six (6) locations in the lower Manhattan Area, three (3) on Broadway and two (2) on Canal Street plus one at 324 5th Avenue, New York, NY.

10.      We do not sell DVDs or CDs nor any electronic devices as part of our business. We have no affiliation with any company that sells DVDs or CDs or any electronic devices used to play DVDs or CDs etc.

11.      The lease which we entered into provides in Paragraph 41, "Use and Occupation" Paragraph 41.01 "Tenant shall use and occupy the demised premises for the wholesale and retail sale of clothing and clothing accessories and for no other purpose". The aforesaid lease further provides in Paragraph 41.05:

> "The sale or offering to sell by Tenant of any counterfeit or bootlegged merchandise is prohibited and shall be a substantial violation of this lease. Tenant acknowledges that this lease is entered into on the condition that the provisions of paragraph 94 be deemed and shall be construed as material obligations of the Tenant under this lease and that Landlord is relying upon Tenant's compliance with its obligations under paragraph 94 of this lease as a material inducement to Landlord to offer this lease to Tenant and to enter into this lease with Tenant."

Since I am not physically on the premises of this store all of the time and have to divide my

–3–

time with our five other stores, we have installed security cameras throughout the demised premises so that we can video tape the activity in the demised premises as well as in front of the store. I can state from my own personal knowledge, that I have never seen any transactions in DVDs or CDs in the demised premises.

12.    The Plaintiffs, in order to protect their copyrighted and trademarked material, and their profits in the sale of this material, have hired a private investigation firm called NGH Associates, Ltd. to patrol Canal Street and the surrounding areas to investigate the sale or distribution of unauthorized (pirated) copies of its movies. To that end NGH hired an investigator by the name of Evelyn Rivera who has submitted an affidavit in this case. Ms. Evelyn Rivera states in Paragraph 7 of her affidavit sworn to on May 17, 2007 as follows, "At approximately 3: 30 PM on April 28, 2007, I observed an African American male, approximately 25 - 30 years of age, approximately 5'9 to 6' medium build standing directly in front of 365 Canal Street". April 28, 2007 is a Saturday and since I observe the Sabbath, I was not present in the demised premises on April 28, 2007. She states that she observed, "an African American male approximately 25 - 30 years of age". I do not know the identity of the person that she is describing. I lease space to someone to sell sunglasses and hats on a pegboard rack in front of my store. My tenant is approximately 60 years of age. He was not authorized to sell DVDs or CDs and I can state from my personal knowledge that no such sales were made while I was present. Furthermore, I never saw any DVDs or CDs being offered for sale on his rack.

13.    Ms. Rivera goes on to state in the same Paragraph (7) of her affidavit as follows: "I approached him and while looking at his wares, he asked me if I wanted to

purchase any current release movies. He moved some of his other merchandise out of the way in order to reveal some current title DVD-R copies of the motion pictures [*sic*] on his display rack and then pulled out a cardboard box containing more current title DVD-R motion pictures"

14.     Annexed hereto as *Exhibit C* are photographs of the front of 365 Canal Street. The rack which she describes is approximately 2 inches thick and there was no place for storage of DVD-Rs in a cardboard box. To my knowledge no DVD-Rs have ever been stored nor displayed on the rack by the person to whom I rented the display space.

15.     This unknown African American male whom we should perhaps refer to as "Mr. X" allegedly pulled out a cardboard box containing "more current title DVD-R motion pictures". Assuming she is telling the truth, where did Mr. X hide this cardboard box. There was not space in or under the rack for this merchandise. Obviously the individual knew he was breaking the law since he kept this alleged contraband hidden from view. Ms. Rivera goes on to state, "I purchased one DVD-R of the motion picture entitled "Perfect Stranger"." If we assume that the sale was a violation of the Plaintiffs' copyrights, why did she not call the police and have the man arrested or at least identified. Obviously, stopping this individual from selling illegal copies of the Plaintiffs' pictures was not important to her. She was the only one who could identify the individual from whom she allegedly purchased the DVD and she is the only person who had possession of the DVD and she decided not to either make a citizens arrest which, as a former New York City Police Department Detective she was thoroughly aware of her right to do, or she could have asked for assistance from the New York City Police Department. Instead she chose

to do nothing.

16.     Clearly, apprehending this individual and confiscating his allegedly pirated DVDs, was not important to the Plaintiffs.  On the other hand, the Plaintiffs have come to this Court seeking relief from this Court for the alleged sale of the same DVDs which they ignored on April 28th, 2007.

17.     On May 7, 2007, investigators from the Plaintiff, U.S. Marshals and officers of the New York City Police Department raided my premises.  They ordered all of the customers to leave the store; they ordered all of my employees to stand up against a wall and with drawn guns, they searched and inspected all areas of my premises.  They found nothing.  The first question is if the Plaintiffs' investigator, Evelyn Rivera purchased a pirated DVD <u>outside</u> my premises, where was the probable cause that the DVD came from <u>inside</u> my premises.  There was no connection in the Affidavit of Evelyn Rivera nor in any of the other affidavits submitted by the Plaintiffs to the <u>inside</u> of my premises since the alleged transaction took place on the sidewalk in front of my store which is <u>outside</u> my premises.  Yet, they raided and searched the interior of my entire store.

18.     According to Ms. Rivera in the same Affidavit sworn to the 17th of May, 2007, she states that on May 3, 2007 she walked past 365 Canal Street and observed the same peg board display but the individual from whom she had allegedly purchased the DVD on April 28th was not present and there was no merchandise displayed on the display rack.  Thereafter, on May 7, 2007 she was allegedly in the vicinity of Canal Street and at 2:00 PM she was in front of 365 Canal Street and observed the same African American male that she saw on April 28, 2007 standing near his alleged display rack.  She allegedly had

a conversation with him. Once again, she did not obtain an identification of the individual, did not place him under arrest for selling her the alleged pirated DVD and did not call the police to make an arrest. On the other hand, on the same date, May 7th, 2007, the Plaintiffs had conducted a raid, at 365 Canal Street during which time they found no contraband on the premises. Obviously, it was not important to the Plaintiffs to enforce their copyrights and trademarks against the individual who actually sold a pirated DVD to this investigator but it was important to interfere with my business and my reputation.

19.    Ms. Rivera goes on to state in paragraph 12 of her affidavit that she reviewed the footage that investigator Lintini of NGH shot on May 17, 2007, which was offered in evidence as Plaintiff's Exhibit 1 at the hearing that took place on May 30, 2007, and she does not identify the male individual in the video as being the same individual who sold her the pirated DVD on April 28, 2007. The only thing she states is that the peg board display in front of the building was similar to the display she observed on April 28, May 3, and May 7, 2007.

20.    It is clear from the foregoing, that the Plaintiffs have targeted my store and have visited the store on at least seven (7) occasions according to Ms. Rivera and Nicholas G. Himonidis' Affidavit, a copy of which is annexed hereto as *Exhibit E*. The Plaintiffs conducted surveillance of 365 Canal Street on the following occasions: April 28, 2007, May 3, 7, 17, 18, 22 and 23, 2007. Notwithstanding the foregoing, they have found no contraband in or around the store. All of this surveillance was triggered by one alleged sale of one alleged pirated DVD which has not even been identified by the Plaintiffs as being a pirated copy of copyrighted material.

21.     Totally absent from the Plaintiffs' affidavits is a statement by an officer or employee of the Plaintiffs that they reviewed the DVD which Ms. Rivera purchased on April 28,2007 and found that the specific DVD which she purchased was counterfeit.

22.     The Affidavit of Nicholas G. Himonidis sworn to the 29th of May, 2007 is extremely informative concerning the heroic efforts which the Plaintiffs have undertaken to try to find counterfeit DVDs on my premises, a copy of this affidavit is annexed hereto as *Exhibit E*.  Mr. Himonidis is allegedly the President and founder of NGH Associates, Ltd., the company which employed the undercover investigators concerned with this case. He states that his company was hired during the period of April 28, 2007 and May 23, 2007 to "identify and interdict illegal sales of first run motion pictures".  If he was hired to "interdict" the sale of allegedly pirated DVDs, why did he permit the individual who sold the pirated DVD to Ms. Rivera on April 28, 2007 to continue to ply his nefarious trade. Totally absent from his affidavit is the explanation of why this person was not identified and his alleged supply of illegal DVDs confiscated. In Paragraph 6 he repeats the allegations of Evelyn Rivera with regard to the description of the alleged purveyor of the illegal DVD-R and states that Ms. Rivera purchased a DVD-R of the motion picture entitled "Perfect Stranger" for five dollars but does not explain why Mr. X was not further identified nor why he was not arrested if he committed an illegal act.

23.     He then states that Ms. Rivera came back on May 7, 2007 and observed the same "African-American" but again does not explain why she did not obtain any identification nor why he was not arrested or otherwise taken into custody for violating the Plaintiffs' rights.  He states that on May 17 , 2007 he sent Earnest Lentini to videotape

–8–

all activity in the vicinity of 365 Canal Street but admits that the same individual who sold the alleged illegal DVD on April 28th 2007 was not present and that no other illegal activity was observed taking place.

24.    Mr. Himonidis further states that on May 22, 2007 he sent three undercover investigators, Lentini, Shector and D'Oria to the vicinity of 365 Canal Street and they found no illegal activity taking place.

25.    On May 23, 2007, he sent two investigators, Shector and field operator D'Oria back to Canal Street to observe and videotape all activity taking place in the vicinity of 365 Canal Street and again they observed no illegal activity.

26.    This Affidavit is the strongest support we could have that no illegal activity is taking place in or about our store. They have been to our store on at least seven (7) occasions and have spent countless hours videotaping the activity in front of our store and all they can come up with is that some unidentified male sold an alleged pirated DVD to one undercover investigator for five dollars on April 28th 2007.

27.    Bases on this evidence, the Plaintiffs conducted a raid of the store on May 7, 2007 and of course discovered no illegal activity taking place on the premises. On the same day May 7, 2007, the Plaintiff with the assistance of investigators, U.S. Marshals and officers of the New York City Police Department raided another premises where I was present, namely 305 Canal Street, New York, NY and with guns displayed, ordered all of our customers out of the store, our employees to line up against the wall and they searched the premises from top to bottom and again found no contraband. Based on the affidavit of Evelyn Rivera, they searched the wrong store. The place where there was criminal

activity was allegedly taking place was 303 Canal Street, not 305 Canal Street. A copy of her affidavit is annexed hereto as *Exhibit D*. I realize that it is extremely important that the Plaintiffs protect their copyrighted material, but their vigilante operations, with the assistance of U.S. Marshals and City of New York police officers are terrorizing legitimate businessmen. The Plaintiffs have earned hundreds and hundreds of millions of dollars on the movies which are listed on *Exhibit 5* to the Amended Complaint (*Exhibit A*) but have brought this claim against the six moving Defendants based on the alleged sale of one alleged infringing DVD for which the investigator paid five dollars. The amended complaint lists the specific alleged violations starting on page 11 and the only allegations relative to the moving Defendants are located in Paragraph 65 which states:

> "At approximately 3:30 PM on April 28, 2007 an investigator purchased an illegally duplicated and manufactured DVD-R copy of "Perfect Stranger" from a merchant affiliated with both Amsterdam Boutique Inc. and Canal Designs, Inc. at 365 Canal Street, New York, NY."

28.     The Plaintiffs, at the preliminary injunction hearing, which took place on May 30, 2007, were unable to identify this alleged "affiliated merchant" nor the nature of the affiliation with any of the moving Defendants.

29.     I testified that I had no knowledge of the identity of this individual who allegedly sold the infringing DVD and notwithstanding the playing of the video which was shot on May 17, 2007 and introduced as Plaintiffs' *Exhibit 1*, the Plaintiffs were unable to identify this alleged purveyor of counterfeit DVDs and were totally unable to connect any of the moving Defendants to this individual.

30.    Other than the fact that this one alleged sale of contraband material took place outside of my store, there was nothing that connected my company nor any individual connected with my company to the sale.

31.    Since the complaint does not allege that Mr. X was an officer, agent, employee nor in any way connected to any of the moving Defendants, this complaint does not state a cause of action against us.

32.    There are no allegations that David Cohen, Yaacov Cohen nor Michael Marvisi personally did anything wrong and therefore the Amended Complaint should be dismissed against them.

CONCLUSION

33.    In view of the foregoing, this Amended Complaint should, in all respects, be dismissed against the moving Defendants with costs, attorneys fees and such other and further relief as to this court may seem just and proper.

I hereby declare under the laws of the United States of America that the following statements are true and correct.

Executed on June 14, 2007

_____
DAVID COHEN