## RIDER TO STANDARD FORM OF STORE LEASE

**ADDITIONAL CLAUSES** attached to and forming a part of Lease dated July 14, 2006, between 365 Canal Corp., as Landlord, and Canal Street Designs, Inc., as Tenant.

Wherever the terms, covenants and conditions contained in the printed Standard Form of Store Lease shall conflict with any of the terms, covenants and conditions in this Rider, the term of this rider shall control.

The captions, numbers and definitions herein are inserted only as a matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this Lease. In conjunction herewith, the defined term "Landlord" as used in this Rider shall be deemed to be one and the same as the defined term "Owner" as used in the printed portion of this Lease.

**40A. RENTAL** Tenant covenants to pay to Landlord, at the address hereinbefore set forth or at such other address as Landlord shall designate, the following sums:

40A.01 A Fixed Rental commencing July 15, 2006 and expiring July 14, 2018 payable in equal monthly installments, in advance, without previous demand therefor and without any setoff or deduction whatsoever, on the first day of each and every calendar month throughout the term of this Lease (except that the first installment of Fixed Rental shall be paid upon the execution of this Lease) as set forth in the following rent schedule:

| YEAR | PER MONTH | PER ANNUM |
|---|---|---|
| July 15, 2006 - July 14, 2007 | $33,000.00 | $396,000.00 |
| July 15, 2007 - July 14, 2008 | $33,000.00 | $396,000.00 |
| July 15, 2008 - July 14, 2009 | $35,000.00 | $420,000.00 |
| July 15, 2009 - July 14, 2010 | $35,000.00 | $420,000.00 |
| July 15, 2010 - July 14, 2011 | $35,000.00 | $420,000.00 |
| July 15, 2011 - July 14, 2012 | $36,000.00 | $432,000.00 |
| July 15, 2012 - July 14, 2013 | $37,000.00 | $444,000.00 |
| July 15, 2013 - July 14, 2014 | $38,000.00 | $456,000.00 |
| July 15, 2014 - July 14, 2015 | $39,000.00 | $468,000.00 |
| July 15, 2015 - July 14, 2016 | $40,000.00 | $480,000.00 |
| July 15, 2016 - July 14, 2017 | $41,000.00 | $492,000.00 |
| July 15, 2017 - July 14, 2018 | $41,000.00 | $492,000.00 |

The Commencement Date and occupancy by Tenant is conditioned upon clearance of Tenant's checks representing: 1) the security deposit, and 2) the first month's rent due pursuant to this Lease. Tenant shall have no right to occupancy of the Demised Premises until clearance of the aforesaid checks, unless bank checks are delivered.

40A.02 Additional Rental, consisting of all such other sums of money as shall become due from and payable by Tenant to Landlord (for default in payment of which Landlord shall have the same remedies as a default in payment of Fixed Rental) under this Lease.

40A.03   **INTENTIONALLY OMITTED**

40A.04   **INTENTIONALLY OMITTED**

**40B. INTENTIONALLY OMITTED**

**40C. UTILITIES**

40C.01 The Landlord shall not be required to furnish or supply and services to Tenant and/or the Demised Premises including, without limitation, electricity, air conditioning, gas, heat or

hot water. Any such services shall be furnished by Tenant at Tenant's sole cost and expense. Tenant shall purchase its utility requirements directly from the utility company supplying the same and shall promptly pay for same based upon separate meters. In addition, Tenant shall be required to maintain in good working order the existing meters for gas and electrical use, at its own expense.

40C.02    In no event shall Tenant use or install any fixtures, equipment or machines, the use of which, in conjunction with other fixtures, equipment and machines, would result in an overload of the electrical circuits servicing the Demised Premises.

40C.03    Interruption or curtailment of such service shall not constitute a constructive or partial eviction nor entitle Tenant to any compensation or abatement of rent. Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of the existing feeders to the Demises Premises.

## 40D.    OBNOXIOUS ODORS

40D.01    Tenant shall take reasonable precautions not to permit any unusual or obnoxious odors to emanate from the Demised Premises. Tenant further agrees to keep all chemicals and/or products that could cause an unusual or obnoxious odor in such a manner so as not to create odors. In the event any odor condition is not promptly remedied within five (5) days after written notice from Landlord, Landlord may, at its discretion, cure such condition and thereafter add the reasonable cost and expense incurred by Landlord therefor to the next monthly rental to become due, and Tenant shall pay said amount as Additional Rental. Landlord shall have the right to enter the Demised Premises at any time and upon reasonable notice to inspect the same and ascertain whether they are clean and free of odors.

## 41.    USE AND OCCUPANCY

41.01    Tenant shall use and occupy the Demised Premises for the wholesale and retail sale of clothing and clothing accessories and for no other purpose. The Landlord makes no representations as the legality of Tenant's proposed use for the Demised Premises. Tenant has inspected the certificate of occupancy for the Building. It is understood that the Owner shall not be obligated to pay to cure any violations as may now or in the future exist within the Demised Premises of which may result from Tenant's use. Tenant shall nonetheless indemnify and hold the Landlord harmless from any liability relating to violations.

41.02    If any governmental license or permit, other than a certificate of occupancy, shall be required for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, and if failure to secure such license or permit would in any way affect Landlord, and the Tenant, as its sole cost and expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

41.03    Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy, the Demised Premises, or do or permit anything to be done in the Demised Premises, in violation of the certificate of occupancy for the Demised Premises or for the Building or the law.

41.04    Tenant, at Tenant's expense, shall comply with all laws, rules, orders, ordinances, directions, regulations and requirements of federal, state, county and municipal authorities, now in force or which may hereafter be in force, which shall impose any duty Tenant with respect to the use, occupation or alteration of the Demised Premises.

41.05    **THE SALE OR OFFERING TO SELL BY TENANT OF ANY COUNTERFEIT OR BOOTLEGGED MERCHANDISE IS PROHIBITED AND SHALL BE A SUBSTANTIAL VIOLATION OF THIS LEASE. TENANT ACKNOWLEDGES THAT THIS LEASE IS ENTERED INTO ON THE CONDITION THAT THE PROVISIONS OF PARAGRAPH 94 BE DEEMED AND SHALL BE CONSTRUED AS MATERIAL OBLIGATIONS OF THE TENANT UNDER THIS LEASE AND THAT LANDLORD IS RELYING ON TENANT'S COMPLIANCE WITH ITS OBLIGATIONS UNDER**

**PARAGRAPH 94 OF THIS LEASE AS A MATERIAL INDUCEMENT TO LANDLORD TO OFFER THIS LEASE TO TENANT AND TO ENTER INTO THIS LEASE WITH TENANT.**

## 42.   TENANT'S INSTALLATIONS

42.01   Notwithstanding anything hereinbefore contained to the contrary, provided Tenant complies with all of the laws, orders, rules and regulations of the governmental authorities and the Fire Insurance Rating Organization having jurisdiction thereof and the local Board of Fire Underwriters or any other similar body and, provided further, Tenant is not in default under any of the terms, covenants and conditions of this lease, Tenant shall have the right, at its own cost and expense, to install such new, first class equipment and fixtures as may be required for the proper conduct of Tenant's business (which is limited to the use provided for in Article 41), except that Landlord's prior consent shall be required for any installation requiring structural alteration or changes to the Demised Premises. Tenant's installation of its equipment, fixtures, etc. shall be in compliance with (i) all floor loading requirements of the Building (as stated in the certificate of occupancy), and (ii) all applicable laws, orders, rules and regulations of governmental authorities having jurisdiction hereof, including but not limited to Building codes and insurance underwriters. Subject to the provisions of this Article, any and all movable equipment and fixtures installed by Tenant (sometimes herein referred to as "Tenant's Property") shall remain personalty notwithstanding the fact that it may be affixed or attached to the realty, and shall, during the term of this Lease or any extension or renewal thereof, belong to and be removable by Tenant, provided that (i) Tenant shall remove said installations prior to the expiration of such term or the sooner termination thereof; and (ii) Tenant shall repair any damage caused by said removal and shall deliver the Demised Premises to Landlord in the same condition, damage by casualty excepted, except if caused by act or omission of Tenant, as upon the commencement of the term hereof, reasonable wear and tear excepted. Prior to the expiration of the term or sooner termination thereof, Tenant shall, at its own cost and expense, remove from the Demised Premises all of Tenant's Property, except such items thereof as Tenant shall have expressly agreed in writing with Landlord are to remain and to become the property of Landlord and Tenant shall repair any damage to the Demised Premises resulting from such removal.

42.02   Tenant shall ascertain from Landlord within thirty (30) days prior to the end of the term hereof or any extension or renewal thereof whether Landlord desires to have any non-movable fixtures, and/or equipment permanently installed by Tenant, removed from the Demised Premises and if Landlord shall so desire, Tenant shall, prior to the end of the term hereof, remove such indicated items and restore the Demised Premises with respect thereto, to the same condition, damage by casualty excepted, except if caused by act or omission of Tenant, as upon the commencement of the term hereof, reasonable wear and tear excepted. All fixtures and equipment installed by Tenant, except those items which Landlord expressly agrees are to remain in the Demised Premises and become the property of Landlord, remaining within the Demised Premises after the expiration of such term or sooner termination thereof and after Tenant is no longer in possession of the Demised Premises shall, at Landlord's option, either (i) become the property of Landlord, free of any claim by Tenant or any person claiming through Tenant, or (ii) be removed and disposed of by Landlord, at Tenant's cost and expense, without further notice to or demand upon Tenant. Tenant's obligations under this Article shall survive the expiration or sooner termination of the term hereof. Anything herein contained to the contrary notwithstanding, it is understood and agreed that all structural improvements made by Tenant in the Demised Premises shall be surrendered to the Landlord at the expiration of the term.

## 43.   SIGNS

43.01   Tenant shall have the right to install and maintain, at its sole cost and expense, a sign indicating the name of Tenant on the Demised Premises, subject to Landlord's prior written approval. Prior to installation and fabrication of the sign, Tenant must obtain Landlord's prior written approval as to all aspects of signs and lighting including but not limited to materials, method of installation, color, type, contents, design, location and dimensions. Tenant shall comply with all of the laws, orders, rules and regulations of the governmental authorities having jurisdiction thereof, including zoning laws, building codes and as required by insurance underwriters. Tenant shall obtain and pay for all permits required therefor. Tenant expressly agrees that such sign shall not be installed on the building until all approvals and permits are first obtained and copies thereof delivered to Landlord

3

**94.     PROHIBITION AGAINST THE SALE OF COUNTERFEIT MERCHANDISE.**

Landlord hereby advises Tenant and Tenant acknowledges that Landlord and/or Landlord's managing agent or subsidiary entities has/have been made aware of allegations of illegal activities under New York Penal Code Section 165.70 *et seq.* and Title 18 U.S.C. Section 2320 involving the sale, offer and/or display of "counterfeit" Louis Vuitton, Fendi, Rolex goods and other "counterfeit" goods from the Demises Premises and/or from the general vicinity of the Demises Premises prior to the Landlord and Tenant entering into this Lease.

In order to respond to such allegations, and to prevent the occurrence of the same during the term of this Lease, Tenant specifically acknowledges that this lease is entered into on the condition, that the provisions of this Article shall be deemed and shall be construed as material obligations of the Tenant under this lease and Landlord is relying on Tenant's compliance with its obligations under this Article as a material inducement to landlord to offer this lease to Tenant and to enter into this lease with Tenant.

A. Prohibited Conduct: Landlord and Tenant agree that Tenant and any subtenant, sublessee, sub-sub-lessee, undertenant, assignee, concessionaire, occupant, or any other person who, with or without Tenant's consent enters onto the premises hereby demised (all of the foregoing hereinafter collectively referred to as the **Premises Responsible Parties**) shall not and shall not permit or acquiesce in the offering, display or sale of any goods or products which would be considered "counterfeit" Louis Vuitton, Fendi or Rolex merchandise or any other "counterfeit" merchandise for the purpose of New York Penal Code Section 165.70, *et seq.* or under Title 18 U.S.C. Section 2320 or otherwise (herein the **Applicable Statutes**).

Without limiting the generality of the foregoing, the term "counterfeit" as used herein shall mean and include any item, matter, material, good or merchandise bearing a trademark for which any of the Premises Responsible Parties shall have no lawful or other legal right to use or which would be considered counterfeit under the Applicable Statutes. In furtherance thereof and again without limiting the generality of the foregoing, no Premises Responsible Party shall bring or permit on the Demised premises, nor display, offer for sale or sell (whether at retail, wholesale, catalogue or for fulfillment by any other means) from the Demises Premises, or permit, acquiesce in or allow the display, offering or sale (whether at retail, wholesale, catalogue or for fulfillment by any other means) from the Demises Premises of any counterfeit Louis Vuitton, Fendi or Rolex or any other counterfeit item including, but not by way of limitation, any item bearing the Fendi, Louis Vuitton or LV names or trademarks.

B. Enforcement Rights:
1. Investigator Rights: Tenant specifically agrees that Landlord and/or any Investigator (as such term is used below) may, from time to time and at any time, and without notice, during or outside of opening hours, enter the Demises Premises and any part thereof, to question any Premises Responsible Persons or their respective employees, agents, officers or agents for the purpose of investigation of any suspected illegal activity on or about the Demises Premises and to examine the current inventory of all Premises Responsible Parties. In any action or proceeding

commenced as provided in this Article based on illegal use of the Demises Premises, each Premises Responsible Party agrees that proof of illegal use of the Demises Premises shall be deemed sufficient if in the form of an affidavit or testimony from the owner of any trademark or any penal or law enforcement officer of any Federal, State or local government, setting forth the activities observed by such person (such persons herein collectively referred to as an Investigator).

In the event that Landlord receives any complaint from Louis Vuitton, Fendi, Rolex or other manufacturer or vendor in connection with illegal activity in, on or about the Demises Premises, then Landlord shall have the right immediately to cause the Investigator to enter the Demises Premises and to take such action as is necessary to investigate the complaint. Tenant shall cooperate in all respects with such investigation, including but not limited to providing unimpaired and full access to the entire Demises Premises (including but not limited to cabinets, basements, attics, and crawl spaces), and to permit any Investigator to interview Tenant, all Premises Responsible Persons and their respective employees, officers, owners and agents and to take statements from such persons, under oath if desired by Investigator as to the facts, nature and circumstances of such complaint.

2. <u>Right to Monitor:</u> If requested by Landlord, Tenant agrees to allow an Investigator to observe the conduct of Tenant and each Premises Responsibility Party in and about the Demises Premises for a period of one year. Such monitor shall be in such form as Landlord, in Landlord's sole judgment, determines to be required as the circumstances, in Landlord's sole judgment dictate, and may without limitation, be in the form of secured mechanical recording devices or the employment of a human monitor. Tenant shall not tamper with, disturb or otherwise interfere with such monitor and shall permit Landlord to have access to the Demised Premises without notice to maintain, repair, replace and/or examine said monitor. Tenant specifically agrees that the data or datum derived from such monitor may be introduced without objection as to relevance or authenticity at the hearing or trial of any proceeding or action commenced by Landlord in which Landlord alleges a breach of Tenant's obligations under this Article.

3. <u>Posting Rights:</u> Tenant shall prominently display in the retail selling area of the Demises Premises a permanent sign and/or placard which shall not be removed, obstructed, blocked, defaced, tampered with or otherwise interfered with during the term of this Lease, in the form annexed hereto as <u>Exhibit 'X'</u>, or in such other form or substance as Landlord from time to time requires. Tenant shall pay the Landlord the amount of One Hundred Dollars ($100.00) each time the Landlord is required to replace the sign due to its removal from the Premises by anyone other than Landlord.

4. <u>Additional Rights:</u> Landlord may, from time to time, impose such further and additional rules, regulations and requirements as Landlord may, in its sole judgment exercise, determine to be necessary and appropriate in order to further the intention of this Article. Any such additional rules, regulations and requirements shall be binding on all Premises Responsible Parties upon receipt thereof.

      C. <u>Remedies</u>: In the event of a breach or violation of the provisions of this Article, Tenant and each Premises Responsible Party agrees that Landlord shall have the right at Landlord's option, upon five (5) days notice to Tenant, to terminate this Lease and upon such termination, Tenant shall quit and vacate the Demises Premises and surrender the same to Landlord, it being the intention of this clause that the foregoing shall constitute a conditional limitation and not an event of default under this Lease. Notwithstanding the foregoing, Landlord shall have the right (i) without the necessity for the service of any predicate notice or any other notice, to commence a proceeding for the recovery of possession of the Demises Premises under Section 231 of the Real Property Law of the State of New York and Sections 711(5) and 715 of the Real Property Actions and Proceedings Law of the State of New York; and (ii) to commence any other action or proceeding for the removal of all Premises Responsible Persons from the Demises Premises and/or for any other relief, including damages and injunctive relief.

      Tenant and each Promises Responsible Party agree that this lease and the right, if any, of the use and occupancy of the Demises Premises shall be immediately revoked, forfeit and void upon the occurrence of any conduct prohibited by this Article which occurs in, on, about from, through, or otherwise in connection with the Demises Premises and in the event Tenant holds over after the occurrence of such conduct, then such holding over shall not be deemed to create any right, license, tenancy or right of occupancy in the Demises Premises in favor of any Premises Responsible Party and the tender or payment or acceptance of any rent, consideration or other thing of value by any Premises Responsible Party and/or the acceptance of the same by Landlord shall not be deemed under any circumstance to be a waiver of any of right or intention of Landlord to prosecute any action under RPL Section 231 or RPAPL Sections 711(5) or 715 or otherwise.

      Each Premises Responsible Person agrees that in the event Landlord or any other person commences any action or proceeding to recover possession of the Demises Premises or for any other relief as contemplated by this Article, then immediately upon the service of any summons, notice of petition, petition, complaint or other papers in such action or proceeding on any Premises Responsible Party and/or the Demises Premises (i) this Lease shall and shall be deemed to be void, terminated, cancelled and at an end, (ii) Tenant and all Premises Responsible Parties shall immediately vacate the Demises Premises; and (iii) Tenant and all Premises Responsible Parties shall cease and desist from any and all commercial activities at or from the Demises Premises. Tenant and each Premises Responsible Person hereby specifically consent to the Landlord or any other person authorized or able under law to obtain a temporary restraining order and a preliminary and/or permanent injunction in the courts of the State of New York in and for the County of New York or the Federal Courts located in the Southern District of New York to enforce the any of the provisions of this Article and Tenant and each Premises Responsible Person hereby consents to the personal jurisdiction of each such court and to the venue stated herein and waives for all purposes the defense of "forum non-conveniens".

      Nothing in this Article shall be deemed to limit or in any other way derogate from the rights of Landlord under this Lease or as otherwise permitted by law, nor shall the inclusion of this Article in this Lease be construed as an election of remedies by Landlord with respect to any default by Tenant under any of the other provisions of this Lease or as to any other right or remedy available to Landlord or as provided by law. Mention in this Lease or Article of any

particular remedy shall not preclude Landlord from any other remedy at law, in equity or otherwise.

In any action or proceeding commenced under this Article against any Premises Responsible Person, Tenant agrees to be liable for and shall pay upon demand the actual attorneys fees incurred in the prosecution of such action or proceeding (and any appeals thereof), including the disbursements thereof and the costs of any Investigator, which fees, costs and disbursements shall be due and payable without regard to the manner in which such action or proceeding is resolved or finally determined and whether or not the party prosecuting the action or proceeding is the prevailing party.