UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
COLUMBIA PICTURES INDUSTRIES, INC.,
SONY PICTURES RELEASING CORPORATION,
SONY PICTURES HOME ENTERTAINMENT INC.,
and MARVEL CHARACTERS, INC.,

           Case No. 07 Civ. – 3597 (LTS)

    Plaintiffs,

 -against-

JOHN and JANE DOE Nos. 1 through 100, and XYZ  **AFFIDAVIT OF**
Company Nos. 1 through 100,          **EVELYN RIVERA**

    Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK  )
         )ss.:
COUNTY OF NASSAU   )

  **EVELYN RIVERA**, being duly sworn, deposes and says:

  1. I am Senior Investigator employed by NGH Associates, Ltd. (hereinafter "NGH"), a New York State-licensed Private Investigation firm, headquartered at 99 Powerhouse Road, Roslyn Heights, New York, 11577.

  2. I make this affidavit, based on my personal knowledge of the facts herein, in reply to the Affidavit of David Cohen in Opposition to the Plaintiffs' Order to Show Cause, granted the 4th day of May, 2007.

  3. I have been employed by NGH for the past eight years. Prior to working with NGH, I was a member of the New York City Police Dept ("NYPD") for nine years, the last four years of which as a Detective. I retired following injuries sustained in the line of duty. During my career with the NYPD I served in a variety of capacities: (1) as a patrol officer in various commands in Kings County focusing on street patrol, quality of life issues and other community

based policing, and subsequently, as an undercover officer and later as an investigator with a narcotics investigation unit. My work in narcotics included undercover drug purchases, wiretap monitoring and translation. I was promoted to Detective during this time.

4. From April 28, 2007 through May 7, 2007, I was working in connection with the Plaintiffs' initiative to identify and interdict illegal sales of first-run motion pictures. Plaintiffs believed these motion pictures were being unlawfully duplicated and distributed by a number of vendors in, around and through various store fronts, shops, kiosks and peddlers throughout New York County.

5. My first shift of work in connection with this project was on April 28, 2007 when I worked from 11 a.m. to 5 p.m. on Canal Street in Manhattan. At approximately 11:30 a.m. on April 28, 2007, I saw an African-American male, 5'10", medium build, with a large black suitcase, on the sidewalk in front of 303 and 305 Canal Street. This man was offering DVD-R's for sale from within the black suitcase. I did not purchase any DVD-R's at this time.

6. At approximately 12:25 p.m. on April 28, 2007, I entered the premises at 303 Canal Street, which appeared at that time to be part of the building labeled "305" Canal Street, and purchased 5 DVD-R motion pictures, to wit: *Perfect Stranger*, *I Think I Love My Wife*, *Condemned*, *The Reaping*, and *Next*. These DVD-R motion pictures were purchased at the rear of the establishment from two (2) African American males who had the DVD-R motion pictures displayed in a wooden case along with other motion pictures and music CDs and DVD-R's. One of these two African-American males identified himself to me as "Bob" and assured me he "guaranteed" the merchandise was "good quality" and that I could return it if it was defective. The motion picture titles referred to above were hidden from view behind the display of other merchandise. When I asked the man who identified himself as "Bob" if he had a copy of

*Spider-Man 3*, an Asian male who was sitting behind a counter display within the same room stated, "it's too soon for *Spider-Man*."

7. At approximately 3:30 p.m. on April 28, 2007, I observed an African-American male, approximately 25 – 30 years of age, approximately 5'9" – 6'-0", medium build, standing directly in front of 365 Canal Street. This man was leaning on the building, with a peg-board and metal wire / grate type makeshift display apparatus on which he had displayed for sale, hats, sunglasses, mixed music CD's and DVD-R motion pictures. His display rack was approximately 6 feet long by approximately 6 to 7 feet high, and was jutting out perpendicular from the front of the store. I believe that it was physically attached to the building, as it was immediately adjacent to the front of the building. In my opinion, it would be impossible for anyone entering or exiting the store not to see the items on display and the person selling them. I approached him and, while looking at his wares, he asked me if I wanted to purchase any current release movies. He moved some of his other merchandise out of the way in order to reveal some current title DVD-R copies of the motion pictures on his display rack and then pulled out a cardboard box containing more current title DVD-R motion pictures. I purchased one DVD-R of the motion picture entitled "Perfect Stranger." He stated that I could return the movie if it was defective.

8. On May 3, 2007 at approximately 4:30 p.m., I walked past 365 Canal Street and observed that the same merchandise display apparatus described above was in exactly the same position / location as observed on April 28, 2007. The man from whom I purchased the DVD-R on April 28, 2007 was not present and there was no merchandise displayed on the display rack on the side where his merchandise had been on April 28, 2007. However, there was an Asian female selling toys and other miscellaneous "dollar store" type merchandise which was displayed

on the other side of the same display rack in front of 365 Canal Street, adjacent to the building and touching it, if not physically attached.

9. On May 7, 2007, I was present in the vicinity of Canal Street and I reported to 365 Canal Street at approximately 2:00 p.m., and observed the same African-American male that I saw on April 28, 2007, standing by his display rack up against the building, again displaying merchandise for sale. However, on this date, I did not observe any DVD-R motion pictures or mixed music CD's on display, only sunglasses and hats as far I observed. I inquired if he had a copy of "Spider-Man 3" to sell me, and he told me that the Police had come the week before and taken away "all his stuff".

10. Once again, his display rack was exactly as I had observed previously, butted up against the building and possibly attached to it in such a way as to obstruct traffic on the sidewalk in front of the building. It is my opinion, as a former police officer with experience in quality of life enforcement and community policing, that the owners and / or tenants of the building must have been aware of its presence. It is also my opinion that the owners or tenants could have had the vendor removed with one complaint to the local police if he was there without their permission.

11. Sometime between 3:00 and 4:00 p.m. on the same day, I received a call from Senior Investigator Wayne Callahan of NGH who stated he was present at 365 Canal and requested a physical description of the African-American male subject described above. I provided Inv. Callahan with said description, including what the subject was wearing.

12.  I have reviewed the video footage shot by Investigator Lentini of NGH at 365 Canal Street on May 17, 2007, showing an African-American male wearing a blue baseball cap and a yellow shirt selling merchandise in front of 365 Canal Street. The merchandise display shown in said video appears to be situated exactly as it was on April 28, 2007, May 3, 2007 and May 7, 2007 on the sidewalk in front of 365 Canal Street.

*[signature]*
EVELYN RIVERA

Sworn to before me this
17th day of May 2007

*[signature]*
Notary Public

NICHOLAS G. HIMONIDIS
NOTARY PUBLIC, STATE OF NEW YORK
No. 02HI6012487
QUALIFIED IN NASSAU COUNTY
MY COMMISSION EXPIRES AUG. 31, 20__